**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**LORENZO TARVER**                                                    **PETITIONER**

**v.**                                                              **No. 4:10CV159-M-A**

**WARDEN JACQUELYN BANKS, ET AL.**                        **RESPONDENTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* petition of Lorenzo Tarver for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has answered the petition. Tarver has not replied, and the time to do so has expired. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

**Facts and Procedural Posture**

Lorenzo Tarver is in the custody of the Mississippi Department of Corrections and is currently housed at the Marshall County Correctional Facility in Holly Springs, Mississippi. He was convicted of possession of marijuana with intent to sell and sentenced to serve a term of sixty years incarceration under MISS. CODE ANN. §§ 41-29-139 and 41-29-142. State Court Record (S.C.R.), Vol. 3, pg. 312.

Tarver appealed his conviction and sentence to the Mississippi Supreme Court, raising as grounds for relief:

I.      Whether prosecutor's closing argument insinuating criminal conduct by Tarver's Jackson lawyers in stealing the missing evidence and then appealing to jury prejudice that counsel thinks they're ignorant constitutes misconduct that deprived Tarver of a fundamental right to a fair and impartial trial?

II.     Whether the trial court abused its discretion in (1) excluding for cause

jurors who expressed concern about missing evidence (2) permitting the prosecutor to talk about two trials: Tarver's and whoever stole the evidence and (3) striking an impaneled juror?

III. Whether the trial court abused its discretion in denying Tarver's motion to sever the gun count of the indictment?

IV. Whether the trial court abused it's discretion in denying Tarver's motion for continuance?

V. Whether the trial court abused its discretion in denying Tarver's motion to suppress his criminal record?

VI. Whether the trial court committed reversible error when it permitted the State to amend the indictment to allege the crime was committed within 1,500 feet of a day car center instead of a park?

VII. Whether Tarver received ineffective assistance of counsel?

VIII. Whether Tarver is entitled to a new trial because of lost or destroyed evidence?

IX. Whether Tarver's right to a speedy trial were denied?

X. Whether the trial court abused its discretion in denying Tarver's motion for recusal?

XI. Whether Tarver's sentence was excessive and constituted cruel and unusual punishment in violation of the United States and Mississippi Constitutions?

XII. Whether the trial court abused its discretion in denying Tarver's motion to suppress evidence?

XIII. Whether the cumulative effects of errors deprived Tarver of the right to a fundamental fair and impartial trial?

The Mississippi Court of Appeals affirmed the conviction and sentence. *Tarver v. State*, 15

So.3d 446 (Miss. App. 2009), *reh'g. denied* May 26, 2009, *cert. denied* August 20, 2009 (Cause

No. 2006-KA-01260-COA). The United States Supreme Court denied Tarver's petition for a

writ of certiorari.

Tarver then filed an "Application for Leave to Proceed in the Trial Court," with an attached "Motion for Post-Conviction Relief," setting forth the following claims (as stated by Tarver *pro se*):

    A.    Petitioner entitled to a new trial based on newly discovered evidence.

    B.    Petitioner entitled to a new trial due to illegal search and seizure, lacking probable cause.

    C.    Petitioner's conviction derived from abuse of discretion by the trial court.

    D.    Petitioner's conviction derived from prosecutorial misconduct.

    E.    Petitioner was denied his right to effective assistance of counsel.

    F.    Petitioner entitled to a new trial due to lost of evidence, that was subject to discovery.

    G.    Petitioner's sentence is illegal as a matter of law and/or in the interest of justice.

The Mississippi Supreme Court denied Tarver's application holding, in pertinent part:

> After due consideration, the panel finds that Tarver raises many of the same issues that were raised on appeal. Those issues are barred by the doctrine of *res judicata* pursuant to Miss. Code Ann. §99-39-21(3). Tarver also asserts that he has newly discovered evidence in the form of recanted witness testimony. However, that issue was before the trial court on a motion to suppress evidence and was raised on direct appeal. Therefore, Tarver's claim of newly discovered evidence is without merit. Tarver's application should be denied.

*See* Exhibit C of State's Response.

Tarver then filed a petition for a writ of *habeas corpus* in this court raising the following grounds for relief (as summarized by the court):

Ground One:  Petitioner is entitled to a new trial based on newly discovered evidence.

Ground Two:   Petitioner is entitled a new trial based on illegal search and seizure.

Ground Three: Petitioner's conviction was the result of prosecutorial misconduct.

Ground Four:  Petitioner received ineffective assistance of counsel.

Ground Five:  Petitioner's conviction was the result of an abuse of discretion by the trial court.

Ground Six:   Petitioner is entitled to a new trial due to the lost evidence.

Ground Seven: Petitioner's sentence is illegal.

Ground Eight: Petitioner was denied his right to a speedy trial.

Ground Nine:  Petitioner was denied due process in that witnesses have recanted testimony and claimed that their testimony was coerced.

Ground Ten:   Petitioner was denied due process in that his convictions were based on evidence which was obtained based on coerced testimony.

Ground Eleven: Petitioner has new evidence which demonstrates that the search warrant was illegal.

Ground Twelve: Petitioner was denied his right to a fundamentally fair trial.

## Discussion

Most of Tarver's twelve grounds for relief contain several sub-grounds, and many of the claims contain no facts to support them.  The State has done an admirable job of sifting through the allegations in an attempt to discern what, precisely, Tarver's constitutional claims might be. The court agrees with the State's interpretation, and has set forth an analysis of each issue below.

## Ground Two:  Search and Seizure of the Marijuana and Firearms

Ground Two of Tarver's petition, a Fourth Amendment claim challenging the validity of the state's search and seizure of marijuana and firearms from his home, will be dismissed, as he

-4-

had a full and fair opportunity to litigate the claim in state court. "[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal *habeas corpus* relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial . . . ." *Id*. at 482. The petitioner seeking *habeas corpus* relief bears the burden to prove the denial of a full and fair hearing. *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986). Tarver presented argument during a two-day suppression hearing on this issue and others prior to his trial. He has not shown that the lengthy hearing was either insufficient or unfair. As such, this ground for relief will be dismissed.

### Remaining Claims – Denied on the Merits in State Court

The Mississippi Supreme Court has already considered the remaining grounds for relief on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris*

*v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to these grounds of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection

-6-

(d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

**Grounds One, Nine, Ten, and Eleven:**
**Probable Cause for the Warrant to Search Tarver's Home**

Grounds One, Nine, Ten, and Eleven set forth the same claim: that the State did not establish probable cause to obtain the warrant used to conduct a search of his home because the confidential informant recanted his statement implicating Tarver. In each of these grounds for relief, Tarver argues that Chris Davis, a witness who testified at the suppression hearing in Tarver's case, has come forward to state that the information he supplied to law enforcement, which was used to establish the probable cause to obtain a search warrant, was false and coerced by police officers. First, Tarver had a full and fair opportunity to litigate this issue in state court, and, as set forth in the discussion of Ground Two above, this court may not review that Fourth Amendment decision in a *habeas corpus* proceeding. *See Stone v. Powell*, 428 U.S. 465 (1976). These grounds for relief will be dismissed for that reason.

Tarver's claim also fails on the merits. Tarver argues that this information regarding Chris Davis constitutes "newly discovered evidence" to prove that the State did not have probable cause to search his property. However, the "newly discovered evidence" had, in fact, been presented to the trial court during the motion to suppress and had also been raised on direct appeal. As such, the Mississippi Supreme Court held that the recantation was not "newly discovered evidence" and the issue was without merit. Indeed, in the present *habeas corpus* petition, Tarver states that he "was aware of this testimony (evidence) at the time of trial but not in its full extent." ECF doc. 9-1, pp. 7-8. The recantation of Chris Davis does not constitute

"newly discovered evidence;" as such, Tarver's claims in Grounds One, Nine, Ten, and Eleven will be dismissed.

## Ground Three: Violation of Tarver's Right to Due Process
## Through Prosecutorial Misconduct

In Ground Three Tarver claims that the state court violated his right to due process because of prosecutorial misconduct, namely (1) the use of leading questions; (2) introducing testimony regarding Tarver's prior conviction; (3) introducing false testimony; (4) commenting on the evidence during examination of a witness on redirect; (5) attempting to rehabilitate State witnesses; and (6) the cumulative effect of the alleged misconduct. An examination of the record reveals that the prosecutor conducted himself appropriately.

The rule for evaluating claims of prosecutorial misconduct in a *habeas corpus* proceeding is straightforward:

> This court's review of an assertion of prosecutorial misconduct takes place in two steps. First, we must initially decide whether or not the prosecutor made an improper remark. *United States v. Munoz,* 150 F.3d 401, 414 (5th Cir.1998). If an improper remark was made, we must then evaluate whether the remark affected the substantial rights of the defendant. *Id.* at 415; *Garza,* 608 F.2d at 663. In assessing whether statements made by a prosecutor were improper, it is necessary to look at them in context. *United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir.1995).

*U.S. v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999).

> Expounding upon this rule, Fifth Circuit held:

> To determine whether the argument affected the defendant's substantial rights, we examine (1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt. [*United States v. Lowenberg*, 853 F.2d 295, 302 (5th Cir.1988)]. As we will not set a conviction aside if the prosecutor's conduct did not contribute to the guilty verdict, this analysis is equivalent to review for harmless error. *United States v. Cardenas*, 778 F.2d 1127 (5th Cir.1985); *United States v. Beckett*,

706 F.2d 519 (5th Cir.1983).

*U.S. v. Simpson*, 901 F.2d 1223, 1227 (5th Cir. 1990).

As to the allegation that the prosecutor inappropriately used leading questions, the record reflects that in each instance, either (1) the questions were not leading, or (2) the trial court admonished the prosecutor not to lead the witness.[1]  In any event, these instances were minor and could not have affected the outcome of the trial.  This issue is thus without merit.

Tarver also alleges that the State inappropriately introduced evidence of his prior conviction on drug charges, citing S.C.R., Vol. 6, pg. 426-427 and Vol. 7, pg. 568.  On pages 426 to 427, the prosecution, without defense objection, entered a certified copy of a judgement from Tarver's previous drug-related conviction.  In addition, the trial court gave the jury the following instruction regarding the use of that judgment:

> The Court instructs the Jury that during the course of this trial you have heard proof that the Defendant has previously been convicted a felony crime.  Proof of this conviction is offered for the purpose of determining whether the Defendant was a convicted felon at the time of the alleged crime.  Proof of this prior conviction is also offered for the purpose of establishing the Defendant's intent to sell, transfer or distribute marijuana in this case.  The jury may not consider this evidence for any other purpose.

S.C.R., Vol. 2, pg.  274.  Given the self-authenticating nature of the document under MISS. R. EV. 901(1), and its general admissibility as a hearsay exception under MISS. R. EV. 803(22), as well as the court's limiting instruction, there was no error in admitting the judgment into evidence.

Tarver also challenges the following exchange found on pages 567-568, arguing that the

---

[1]As the State noted in its response to the instant petition, though Tarver references many pages in the record in this ground, only pages 472 and 519 of the trial transcript appear to contain relevant statements and objections.  The court will thus limit its discussion to these two pages.

prosecutor made references to Tarver's prior conviction or bad acts:

> Q:     How did you know 506 was where Lorenzo Tarver stayed?
>
> A:     I been at the police department since 1980 and on several occasions I've
>        had dealings with Lorenzo, and I've always known that to be his address
>        especially with other police reports where he's been arrested and listed that
>        address.
>
> Q:     And those would be on drug related issues?
>
> A:     There were a couple of drug related issues, yes, sir.

S.C.R., Vol. 7, pp. 567-568.

Even if the testimony were improper (which does not appear to be the case), such error is harmless because the prosecution otherwise presented the jury with overwhelming evidence of Tarver's guilt. Officers served a search warrant on 506 Cypress Avenue in Greenwood, MS, on June 18, 2004. S.C.R., Vol. 6, pg. 399. There was testimony that, when officers arrived at the house, Tarver walked up to the front door, was startled by the police and opened the door for them. S.C.R., Vol. 6, pg. 400, Vol 7, pp. 514, 570. Further, two bags containing marijuana were found in a bedroom that appeared to be Tarver's, which Tarver admitted that he owned. S.C.R., Vol. 6, pg. 401, Vol. 7, pp. 517, 571-572. This marijuana was later found to weigh 4.2 kilograms. S.C.R., Vol. 6, pg. 413. Photos of this marijuana were admitted into evidence and identified by witnesses. S.C.R., Vol. 7, pg. 452, 521, 572. At Tarver's direction, police found a scale under the bed and nude pictures in an envelope stuffed in a phone book and placed between the mattresses, in the bedroom where the marijuana was found. S.C.R., Vol. 6, pp. 401-402, Vol. 7, pp. 457, 517, 572. Officers also found envelopes addressed to Tarver at the 506 Cypress address and a large amount of cash inside of a safe found in the bedroom, to which Tarver had a

-10-

key. S.C.R., Vol. 6, pg. 402, Vol. 7, pp. 457, 573. Further, officers discovered a room containing illegal gaming machines in a back room, which Tarver admitted he owned, and officers also found a 40 caliber Baretta stamped "Shelby County Sheriff's Office" in that room. S.C.R., Vol. 6, pg. 403.

After the marijuana was discovered in the bedroom, the officers stationed outside noticed a strong smell of marijuana coming from a locked shed. S.C.R., Vol. 7, pg. 481. The keys to this shed were also found on Tarver's person. S.C.R., Vol. 7, pg. 462. Inside the shed, another sixty pounds of marijuana were found stored in large black garbage bags. S.C.R., Vol. 6, pg. 413. Photos of the marijuana recovered from the shed were admitted into evidence and identified by witnesses. S.C.R., Vol. 6, pg. 418, Vol. 7, pg. 482. A transfer sheet was admitted demonstrating the marijuana had been transported to the crime lab for testing. S.C.R., Vol. 7, pg. 504. The crime lab technician testified that core samples were taken from the marijuana submitted and test results demonstrated that the substance was, in fact, marijuana. S.C.R., Vol. 7, pp. 534-536. These core samples were admitted into evidence. S.C.R., Vol. 7, pg. 536. In addition, a crime lab report was admitted – and verified that the two sets of marijuana submitted weighed 4.8 and 28.3 kilograms respectively. S.C.R., Vol. 7, pg. 538. Given this evidence, the single reference to prior police calls to Tarver's home involving "drug related issues" is harmless.

### Ground Four: Ineffective Assistance of Counsel

In Ground Four Tarver claims that counsel rendered ineffective assistance by his: (1) failure to object to the introduction of the firearm into evidence; (2) failure to object to the introduction of the keys to his shed; (3) failure to object to introduction of documents showing his prior conviction for drug-related crimes; (4) failure to object to the State's use of Eric Owens

-11-

to prove that Tarver resided at the address searched (arguing that, although Owens was a parole officer, he was not Tarver's parole officer); (5) failure to object to the court's dismissal of Juror No. 11; and (6) introduction of evidence of Tarver's prior convictions and the commission of unrelated crimes. Again, the state court record belies these claims.

Claims that counsel was ineffective are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To merit *habeas corpus* relief on a claim of ineffective assistance of counsel, a petitioner must prove both constitutionally deficient performance by counsel – and actual prejudice as a result of the deficient performance. *See also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A petitioner's failure to establish either prong of the *Strickland* test warrants rejection of his claim. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998); *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986)(overruled on other grounds).

Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Counsel's performance is deficient if "it falls below an objective standard of reasonableness" as measured by professional norms. *Strickland*, 466 U.S. at 688. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988).. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). "[T]he [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). A strong presumption exists that counsel has exercised reasonable professional judgment. *Strickland*, 466

U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 187 (5th Cir. 1986).

    To prove prejudice, Tarver must show that the result of the proceedings would have been different – or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. He must prove that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," *Strickland*, 466 U.S. at 687, and demonstrate a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. *Id*. at 694. *See also Mayabb v. Johnson*, 168 F.3d 863,869 (5th Cir. 1998); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir, 1998). A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceeding. *Moawad v. Anderson, supra*. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Summit v. Blackburn*, 795 F.2d 1237,1242 (5th Cir. 1986).

    Under this standard, all Tarver's claims of ineffective assistance of counsel must be denied.

### Trial Counsel Failed to Make Key Objections to Inadmissible Evidence

    Tarver argues that trial counsel was ineffective for: (1) failing to object to the admission of the firearm into evidence; (2) failing to object to the admission of the keys into evidence; (3) failing to object to testimony regarding Tarver's prior convictions; (4) failing to object to calling of Eric Owens as a rebuttal witness; (5) failing to object to the dismissal of Juror No. 11; and (6) eliciting testimony regarding Tarver's prior convictions or other bad acts.

### Trial Counsel Failed to Object to the Admission of the .40 Beretta

    Tarver complains that the stolen Shelby County Sheriff's Office 40 caliber Beretta (found

in the search of Tarver's home) was admitted into evidence without objection as Exhibit S-4. S.C.R., Vol. 6, pp. 407-408. Tarver argues that trial counsel should have objected to the admission of this evidence because "there was no connection between Petitioner and the gun." ECF doc. 9-1, pg. 14. This claim is frivolous, as the firearm had been part of the evidence trial counsel sought to exclude during a two-day suppression hearing. S.C.R., Vol. 4, pg. 1 through Vol. 5, pg. 279. Indeed, prior to the admission of the stolen Beretta, there had been testimony that Tarver was alone in the house when the police arrived to conduct the search and, after being ordered to do so, let the officers into the home. S.C.R., Vol. 6, pg. 400. Further, Tarver admitted to the possession of the marijuana found in the bedroom of the house and directed officers to the scale and nude pictures concealed in the room. S.C.R., Vol. 6, pp. 401-402. Tarver also had provided the key to a safe in the bedroom which contained letters addressed to Tarver at that address. S.C.R., Vol. 6, pg. 402. In addition, there was testimony that Tarver admitted that the illegal gambling machines in the room where the Baretta was found belonged to him. S.C.R., Vol. 6, pg. 403. As such, the jury had ample evidence to determine that Tarver was a resident of that address – and thus had control over the property contained there. Therefore, the trial judge previously ruled the gun admissible (over Tarver's objection), *and* there was more than enough evidence for the jury to find that Tarver possessed the .40 Beretta. Under these circumstances, any objection lodged to the admission of the Baretta would have been meritless. Clearly, the court will not hold counsel deficient for failing to lodge a meritless objection. *See Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.").

**Trial Counsel Failed to Object to the Admission of the Keys to the Shed**.

Tarver also complains that trial counsel failed to object to the admission of evidence demonstrating "Petitioner's connection with the marijuana allegedly found in the shed." ECF doc. 9-1, pg. 14. Although this allegation is far from clear, Tarver cites Exhibit S-3, which was the set of keys recovered from Tarver's person containing keys which opened both the safe found in the bedroom and the padlocked shed in the backyard. These keys were admitted without objection. S.C.R., Vol. 6, pp. 406-407. As with the Beretta discussed above, the keys were retrieved from Tarver during the course of the legal search, and the trial judge denied Tarver's motion to suppress the evidence seized during this search. Further, the keys were found on Tarver's *person* (not merely in the residence), and Officer Bedell demonstrated that a key on the ring fit the safe which had been recovered from the bedroom. S.C.R., Vol. 6, pg. 406. Any objection to the admission of these keys would have been without merit, and trial counsel was wise not to object to their introduction. *Clark v. Collins*, 19 F. 3d at 966.

### Trial Counsel Failed to Object to the Admission of Proof of Tarver's Prior Conviction

Although Tarver states his claim as a challenge to counsel's failure to object to *testimony* regarding his prior conviction, he cites to Exhibit S-15, the certified judgment of his prior conviction. As such, the court has construed this allegation as a challenge to counsel's decision not to object to the admission of the judgment. Counsel initially objected to the line of questioning regarding the judgment as hearsay. S.C.R., Vol. 6, pg. 427. However, the prosecutor then had Officer Bedell verify that the judgment was a certified copy from the United States District Court and submitted the exhibit as a self-authenticating document. S.C.R., Vol. 6, pg. 427. At that point, the judgment was entered into evidence without objection. S.C.R., Vol.

6, pg. 428. The judgment was clearly admissible under MISS. R. EV. 803(22) and 902. Thus, counsel's decision not to challenge it was reasonable. *Clark v. Collins*, 19 F. 3d at 966. This claim for relief is therefore without merit.

### Trial Counsel Failed to Object to the Calling of Eric Owens as a Rebuttal Witness

To rebut Tarver's contention that he did not exercise dominion over the house searched, the State called Eric Owens, a federal probation officer for the Northern District of Mississippi. S.C.R., Vol. 8, pg. 699. Tarver complains that Owens had not been his probation officer and could only testify to "second-hand" information regarding Tarver's residence. Owens, however, testified that Tarver had been supervised by Owens' partner, but that Owens had access "to all the records and documents and information" regarding Tarver. S.C.R., Vol. 8, pg. 699. Tarver's probation form was admitted into evidence as Exhibit S-25; it bore Owens' signature and listed the 506 Cypress house as Tarver's address. S.C.R., Vol. 8, pg. 700. Indeed, Owens testified that he personally met with Tarver at the 506 Cypress address "on more than one occasion," and that Tarver had indicated that was his residence. S.C.R., Vol. 8, pp. 700-701. Owens' testimony contained only information of which he had personal knowledge; as such, there was no basis for an objection to his testimony. Tarver's counsel cannot be held deficient for failing to object to Owen's rebuttal testimony. *Clark v. Collins*, 19 F. 3d at 966.

### *Trial Counsel Failed to Object to the Dismissal of Juror No. 11*

Tarver next complains that trial counsel did not object to, or make an adequate record of, the court's dismissal of Juror No. 11 without first holding an in camera examination of the juror. Before the close of the State's case, the prosecution brought to the attention of the judge that:

One of the male jurors, and I think it was – it may have been – I think it was Juror

-16-

> 11, Jimmy Tribblett, who has a blue – seemed like a blue striped shirt, glasses –
> that was it Jimmy Tribblett – as he's walking out of the courtroom, he had
> motioned and said something to one of the guys that were back here that were
> waiting on Lorenzo Tarver after the trial.

S.C.R., Vol. 7, pg. 589. The trial then decided that the matter should be resolved at the close of

trial. S.C.R., Vol. 7, pg. 589. Then, after the jury instruction conference, the State again

discussed their concerns regarding Juror No. 11, stating:

> Juror No. 11, as he left the courtroom for lunch, was seen by myself and I think
> James Payne trying to make a – was saying something to one of the friends of the
> defendant back here, but also he's been making eye contact with the defendant
> throughout the trial. But I was most concerned about the – in the open court the
> blatant hello or whatever it was.

S.C.R., Vol. 8, pp. 722-723. Trial counsel indicated the he had no knowledge of any such

incident and complained that "every juror there has looked at the defendant at some point."

S.C.R., Vol. 8, pg. 723.

> James Payne was then placed under oath and allowed to testify as to his observations.

S.C.R., Vol. 8, pg. 724. Payne testified that:

> I'm aware of – I don't know exactly what number he was, but he have on a blue
> striped shirt, long hair, and eyeglasses. When he was exiting the courtroom, there
> was a civilian sitting in the bench out there – he had on a tank top – and they was
> conversating, and I turned around and I say, you can't talk to the jurors. And he
> said, well, I wasn't talking to him. So he left and went out of the courtroom.

S.C.R., Vol. 8, pg. 724. Following this testimony, trial counsel argued that "it's no one

connected to this trial or this case, matter, and there's no evidence that whatever he said was out

of line. I think he could have said, good day, how you doing, or whatever." S.C.R., Vol. 8, pg.

725. Trial counsel made other arguments that the juror should not be excused. S.C.R., Vol. 8,

pp. 725-727. However, the trial court held:

-17-

Well, Rule 3.06, Conduct of Jurors, "Jurors are not permitted to mix and mingle with the attorneys, parties, witnesses, and spectators in the courtroom." And so I think that the evidence clearly establishes that the juror has violated Rule 3.06. So I'm going to strike that juror from the panel and substitute Ms. Cole, who would be the next juror. She's alternate No. 1.

S.C.R., Vol. 8, pg. 727.

Following the trial court's ruling, trial counsel continued to argue against the trial judge's decision. S.C.R., Vol. 8 pp. 728-729. In fact, trial counsel requested that the trial judge "allow the juror to come in and defend himself." S.C.R., Vol. 8, pg. 729. However, the trial judge felt it would be inappropriate to do so and "would taint the pool, the panel for the Court to interrogate one of them outside of the presence of the others." S.C.R., Vol. 8, pg. 730. After closing arguments, trial counsel requested a mistrial based, in part, on the dismissal of Juror No. 11. S.C.R., Vol. 9, pg. 758. However, the trial judge indicated that he had ruled regarding Juror No. and denied the motion for mistrial. S.C.R., Vol. 9, pg. 760. Given counsel's *many* attempts to keep Juror No. 11 in the pool, Tarver's claim that counsel failed to do so is frivolous. Once again, Tarver's claims do not square with the court record. This claim will be dismissed as frivolous.

### Trial Counsel Improperly Elicited Testimony of Petitioner's Prior Conviction or the Commission of Unrelated Crimes.

Tarver does not specify what portions of the testimony he challenges in this claim. ECF doc. 9-1 pg. 15.[2] Thus, the allegation is a mere legal conclusion and fails to state a constitutional claim for relief. *Clark v. Collins*, 19 F. 3d at 966. As such, Tarver is not entitled to federal

---

[2] Instead of providing further argument on this ground, Tarver argues that the search warrant was illegal. ECF doc. 9-1, pp. 15-16. This argument does not support the allegation of ineffective assistance of counsel set forth in this ground.

*habeas corpus* relief on this ground.

As set forth above, Tarver has not shown (in any of his ineffective assistance of counsel claims) that trial counsel deficient in any way, and, even if he could show deficient performance, he has not shown that counsel's actions caused prejudice to his case. Indeed, had counsel acted as Tarver wished, an acquittal would have been nigh on impossible, given the mountain of evidence adduced against him. Therefore, the Mississippi Supreme Court's holding that Tarver failed to demonstrate constitutionally ineffective assistance of counsel was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Additionally, the decision was not based on an unreasonable determination of the facts in light of the evidence. Therefore, Tarver is not entitled to *habeas corpus* relief on Ground Four.

## Ground Five: Abuse of Discretion

In Ground Five Tarver argues that the trial court abused its discretion by: (1) denying defense counsel's motion for recusal of the trial judge; (2) denying Tarver's motion to suppress evidence recovered during the search of his home – and evidence of his prior convictions; (3) denying Tarver's motion to dismiss for violation of his right to a speedy trial; (4) denying Tarver's request for a reduction of his bond; (5) denying Tarver's motion to sever the counts of the indictment; (6) dismissing potential jurors; (7) enhancing Tarver's sentence under MISS. CODE ANN. § 41-29-142 using evidence not presented to the jury; and (8) dismissing Juror No. 11. None of these grounds for relief has any basis in the law; as such, they will be denied.

## Denial of Motion for Trial Judge to Recuse Himself

Prior to trial, Tarver's original counsel, Chokwe Lumumba, moved for the judge to recuse

-19-

himself. S.C.R., Vol. 4, pg. 7. In support of this motion, Lumumba argued that the trial judge had unnecessarily delayed ruling on a petition for a writ of *habeas corpus* in a separate case of Tarver's. S.C.R., Vol. 4, pp. 8-9. Lumumba also argued that he had previously been late to court and, upon arriving in the courtroom, had gotten into a disagreement with the prosecutor and court administrator and was instructed by the bailiff to "leave the front." S.C.R., Vol. 4, pp. 9-12. He further complained that someone told him the trial judge had commented that Lumumba was always late to court. S.C.R., Vol. 4, pg. 13. The trial judge denied Lumumba's motion to recuse, holding:

> Okay. Well, I'm going to deny the motion. I think that you may have stated some case for you and the prosecutor to go to the Bar with your dispute or something like that, but I don't see how you can say that relates to the Court, because I wasn't even present when any of that happened. And, you know, as far as for Monday, Court was set at 8:30. The docket went out. You were late to Court. I think you have appeared before me this year about five times. You've been on time one time which was the second day of the trial involving the gentleman who was set for sentencing on Monday. I can't recall his name at the present time. All the rest of the times you've been an hour late, an hour and a half late. You were even late an hour when we were picking a jury, and we had to delay the trial. And you're very tardy in your approach to appearing before the Court. And if you think that that does aggravate the judges, it does a little bit. You know, you're not the only one that's late, so I'm not going to hold it against you and I'm certainly not going to hold it against your client. But we do have all these rules and we expect them to be followed. And when you came in this morning and you didn't appear at docket call at 8:30 on Monday to -- like everybody else is supposed to and like everybody else in this case did, and you did not advise the Court that you had motions that you wanted to have heard. And that's the rule in this district, and it's on the docket sheet. It is the responsibility of the moving lawyer to see these cases and have them heard by the judge seven days in advance of the trial, so these should have been set before last week. And when the lawyer does not set them according to the rules, the Court assumes that they are abandoned. And that happens all the time. We have -- you know, the dockets are full of motions that lawyers abandon prior to the trial for whatever reason, and I don't know why they abandon them but they do, and I assumed -- well, I didn't assume anything on this case, because I didn't have copies of these motions. That's another thing. You must serve the judge with a copy of a motion. And I checked the file at my office

and there's no -- we've been served with none of this, so, you know, that's another thing.  But, anyway, the motion is denied, and I'm not going to hold your behavior in Court against you or your client.  And as far as what goes on when I'm not in the Court, I don't even care about that.

S.C.R., Vol. 4, pp. 17-19.

Lumumba later filed a written motion to recuse arguing that the trial judge's court administrator had filed a bar complaint against Lumumba.  S.C.R., Vol. 1, pg. 55.  The trial court entered a written order noting that Lumumba had since been temporarily suspended from the practice of law.  In addition the trial judge stated that, "[h]aving reviewed the Code of Judicial Conduct, this Court cannot find just cause to recuse himself and therefore the motion shall be denied."  S.C.R., Vol. 2, pg. 197.  The appellate court considered this issue on direct appeal and held:

> Although Tarver complains that he believes the judge was biased against Lumumba, Tarver was represented by ShamsidDeen at trial since Lumumba was suspended from the practice of law. There has been no evidence presented that suggests the circuit court judge was biased or not qualified. The motions that were denied were not based on biases against Tarver, but they were denied for reasons discussed throughout this opinion.  The circuit court judge refused to recuse himself stating that he "[could] not find just cause to recuse himself." Accordingly, we find no reason to doubt the judge's impartiality.  This issue is without merit.

*Tarver*, 15 So.3d at 463.

"All questions of judicial qualification may not involve constitutional validity.  Thus matters of kinship, personal bias, state policy, [and] remoteness of interest would seem generally to be matters merely of legislative discretion."  *Tumey v. Ohio,* 273 U.S. 510, 523, 47 S.Ct. 437, 441 71 L.Ed.2d 749 (1927).  "'[O]nly in the most extreme of cases' does the Due Process Clause require disqualification of a judge." *Public Citizen, Inc. v. Bomer,* 274 F.3d 212, 217 (5th Cir.

-21-

2001) (citing *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 821, 825-26, 106 S.t. 1580, 89 L.Ed.2d

823 (1986)). "For the requisite 'extreme case,' a party must show a judge has a 'direct, personal,

substantial, pecuniary interest in reaching a conclusion against him in his case.'" *Id.* Judicial

remarks made during the course of a proceeding do not support a claim of bias unless the

remarks "reveal such a high degree of favoritism or antagonism as to make fair judgment

impossible." *Nichols v. Scott,* 69 F.3d 1256, 1277 (5th Cir. 1995) (citations omitted). A trial

judge's justifiable rebuke of an attorney who is often late to arrive for a court date does not rise

to that level.

Under these facts, Tarver cannot demonstrate that the trial judge had a "direct, personal,

substantial, pecuniary interest in reaching a conclusion against [Tarver] in his case." *Bomer,*

*supra.* As such, Tarver has not shown that the trial judge's decision was based on an erroneous

view of the law or a clearly erroneous assessment of the evidence. As such, the appellate court's

decision upholding the trial judge's denial of the motion to recuse was neither contrary to, nor

did it involve an unreasonable application of, clearly established federal law, as determined by

the Supreme Court of the United States. In addition, the decision was not based on an

unreasonable determination of the facts in light of the evidence. Tarver is not entitled to relief as

to this claim.

### Trial Court's Denial of Tarver's Motion to Suppress

The court already rejected this ground for relief in the discussion above regarding

Tarver's motion to suppress.

### Violation of Tarver's Right to a Speedy Trial

Tarver next complains that the trial judge abused his discretion in denying his  motion to

dismiss his case for violation of Tarver's speedy trial rights.  On the contrary, as addressed below

in the discussion of Ground Eight, the State did not violate Tarver's right to a speedy trial.

### Failure of the Trial Judge to Reduce Tarver's Bond

Tarver complains that the trial judge erred in denying his motion to reduce his bond.

Trial counsel filed a written motion to reduce Tarver's bond from $250,000.00 to $25,000.00 or

less.  S.C.R., Vol. 1, pg. 66.  However, the trial judge ruled:

> The Court held a hearing on June 22, 2005, at which the videotaped statement of
> Chris Davis was put into evidence.  The Court hereby takes judicial notice of said
> statement, already in evidence in this cause.  Based on the statement of Chris
> Davis, which the Court previously accepted as truthful, the Court finds Lorenzo
> Tarver to represent[] a danger to the community and therefore denies the motion
> for reduction in bail.

S.C.R., Vol. 2, pg. 198.

The Eighth Amendment prohibits excessive bail.  "'Excessive bail shall not be required,

nor excessive fines imposed, nor cruel and unusual punishments inflicted.'  The eighth

amendment applies to the states.  *See Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63

L.Ed.2d 382 (1980)."  *Terrebonne v. Blackburn,* 624 F.2d 1363, FN 5 (5th Cir. 1980).  However,

the Fifth Circuit has also recognized that "the Supreme Court has not squarely considered the

issue." *Simon v. Woodson*, 454 F.2d 161, 165 (5th Cir. 1972).  The United States Supreme Court

has never clearly established what constitutes "excessive bail" so as to render an certain amount

unconstitutional.  Thus, in the absence of clearly established Supreme Court law, the state

appellate court's decision that the trial judge's denial of the motion of bond was correct is not

contrary to clearly established federal law as required by the Antiterrorism and Effective Death

Penalty Act.  In any event, the trial judge's decision was reasonable based upon the record.

-23-

Tarver has not shown that the trial judge's decision was based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See Ragsdale, supra*. The Mississippi Supreme Court was therefore correct in finding that the trial judge did not abuse his discretion in denying Tarver's motion for a reduction of bail, and Tarver is not entitled to *habeas corpus* relief on this claim.

### Denial of Tarver's Motion to Sever the Indictment

Tarver also complains that the trial judge abused his discretion in denying his motion to sever the counts of the indictment. "Severance is within the discretion of the trial court and is required only in cases of compelling prejudice." *United States v. MacIntosh*, 655 F.2d 80, 84 (5th Cir. 1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1450, 71 L.Ed.2d 662 (1982). "The burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed by a reviewing court." *United States v. Abshire*, 471 F.2d 116, 118 (5th Cir.1972). In addition, "[a] number of cases before [the Fifth Circuit] have upheld the denial of severance even when one of the charged offenses involves proof of a prior felony." *Breeland v. Blackburn*, 786 F.2d 1239, 1241 (5th Cir. 1986).

Tarver filed a motion to sever the two counts of the indictment. S.C.R., Vol. 1, pg. 41. The trial judge denied this motion holding that the two charges were based on the same act or transaction "as the defendant was allegedly in possession of the marijuana at the same time he was in possession of a firearm" and that "any prejudice to the defendant that may result from the admitting his prior criminal record can be adequately limited by the Court giving a limiting instruction to the jury in this cause." S.C.R., Vol. 2, pg. 202. The trial judge instructed the jury regarding the limited purpose of the admission of Tarver's prior criminal record. S.C.R., Vol. 2,

pg. 274.    The appellate court considered the trial judge's denial of the motion to sever and held:

> We find no merit in Tarver's argument that he was prejudiced by trying the two
> offenses together in the same criminal proceeding.  The circuit court properly
> instructed the jury on the limited purpose for which the evidence of Tarver's prior
> conviction was admitted.  Furthermore, the jury did not find that Tarver was guilty
> of the second count of the indictment, in which he was charged with possession of
> a firearm by a convicted felon; therefore, the jury was clearly able to separate and
> differentiate between the two crimes.  Accordingly, the circuit court did not abuse
> its discretion in denying Tarver's motion to sever.

*Tarver*, 15 So.3d at 456.

Especially in light of the jury's finding of "not guilty" as to the felon in possession

charge, Tarver cannot establish that the trial judge's decision was based on an erroneous view of

the law or a clearly erroneous assessment of the evidence as required by *Ragsdale, supra*.

Therefore, the Mississippi Supreme Court's decision (that the trial judge did not abuse his

discretion in denying the motion to sever the counts of the indictment) was neither contrary to,

nor did it involve an unreasonable application of, clearly established federal law, as determined

by the Supreme Court of the United States.  Neither was the decision based on an unreasonable

determination of the facts in light of the evidence.  As such, Tarver is not entitled to *habeas

corpus* relief on this allegation of error.

### Dismissal of Certain Jurors (7, 12, 16, 45, 53, 59, 60)

Tarver next complains that the trial court abused its discretion in dismissing certain

members of the venire for cause "solely because they would be affected in a specific way,

because of the missing evidence (marijuana) in this case."  ECF doc. 9-1, pg. 17.  However,

Tarver fails to specify the jurors involved or to provide citations to any particular pages of the

trial transcript in support of his argument.  The court has, however, identified the jurors which

were stricken for cause based on their answers regarding the stolen marijuana – and will discuss

the issue as to those jurors.

> There are good reasons to apply the statutory presumption of correctness to the
> trial court's resolution of these questions.  First, the determination has been made
> only after an often extended voir dire proceeding designed specifically to identify
> biased veniremen.  It is fair to assume that the method we have relied on since the
> beginning, *e.g., United States v. Burr*, 25 F.Cas. No. 14,692g, p. 49, 51 (No.
> 14,692g) (CC Va.1807) (Marshall, C.J.), usually identifies bias.  Second, the
> determination is essentially one of credibility, and therefore largely one of
> demeanor.  As we have said on numerous occasions, the trial court's resolution of
> such questions is entitled, even on direct appeal, to "special deference."  *E.g.,*
> *Bose Corp. v. Consumers Union of U.S., Inc*., 466 U.S. 485, 500, 104 S.Ct. 1949,
> 1959, 80 L.Ed.2d 502 (1984).  The respect paid such findings in a habeas
> proceeding certainly should be no less. *See Marshall v. Lonberger*, 459 U.S. 422,
> 434-435, 103 S.Ct. 843, 850-851, 74 L.Ed.2d 646 (1983).

*Patton v. Yount*, 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892-2893.  Keeping this deference in

mind, the court will analyze the dismissal of the jurors in question.

During *voir dire*, the prosecutor asked the venire "After hearing all this, is there anybody

who would say that they're automatically going to vote not guilty because the State won't be able

to bring in these big bales of marijuana?  It's okay if you do.  We just need to know it."  S.C.R.,

Vol. 6, pg. 326.  As the State set forth in detail in its answer, each of the jurors in question

expressed doubt as to his ability to render a fair verdict if the overwhelming bulk of the

marijuana in question could not be produced.  *See,* S.C.R. pg. 326-371.  The court set forth its

rationale for excusing the jurors in question for cause, as each expressed doubt as to whether he

could render a fair verdict based upon the evidence available.

As such, the state supreme court's decision that the trial judge did not abuse his discretion

with regard to jury selection was neither contrary to, nor did it involve an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of the United

States.  Additionally, the decision was not based on an unreasonable determination of the facts in light of the evidence.  This issue will therefore be denied for want of substantive merit.

### Enhancing Tarver's Sentence Under MISS. CODE ANN. § 41-29-142 Using Evidence Not Presented to the Jury

Tarver argues that the trial judge abused his discretion in enhancing his sentence under MISS. CODE ANN. § 41-29-142 without requiring the facts supporting this enhancement to first be presented to the jury as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi* the Supreme Court held:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

*Id*, 530 U.S. 466, 120 S.Ct. at 2363.  In this case, Tarver's sentence was enhanced under MISS. CODE ANN. § 41-29-142, because the marijuana was located on a property which was within 1,500 feet of a daycare center.  S.C.R., Vol. 1, pg. 1.  After, the jury returned a verdict of guilty with regard to possession of marijuana with intent to distribute and was excused, the State put Officer Bedell on the stand.  S.C.R., Vol. 9, pg. 765.  Officer Bedell testified that he personally took a measurement from the property line of 506 Cypress to the property line of the Willow Street Development Center and obtained a measurement of 899 feet.  S.C.R., Vol. 9, pg. 766.  Further, a photograph of the development center was introduced without objection as Exhibit S-26.  S.C.R., Vol. 9, pg. 766.  Thereafter, the trial court found that the State had proven beyond a reasonable doubt that the crime occurred within 1,500 feet of a daycare center.  S.C.R., Vol. 9,

pg. 773. The evidence supporting the enhancement was not presented to the jury.

*Apprendi*'s requirement that such facts be decided by a jury can, however, be waived. In *Blakely v. Washington*, 542 U.S. 296 (2004), the Court examined criticism of *Apprendi, supra*. The Court held that "[e]ven a defendant who stands trial may consent to judicial factfinding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial." *Blakely*, 542 U.S. at 310. *See also Shepard v. U.S.*, 544 U.S. 13, 24 and FN5 (2005). Tarver did not object that evidence used to enhance his sentence was not presented to the jury. S.C.R., Vol. 9, pg. 761-775. Neither did he raise a claim on direct appeal that his sentence was improperly enhanced for this reason. *See* Appellant's Brief. Instead, Tarver chose to raise this issue for the first time in his state court petition for post-conviction relief. In failing to object to the State's presentation of the enhancement evidence to the trial judge rather than the jury, Tarver waived any claim to a constitutional violation under *Apprendi, supra*.

In any event, use of evidence that Tarver committed his crimes within close proximity to a school is harmless, as his sentence was also subject to doubling because he had a prior drug felony conviction. *See* MISS. CODE ANN. § 41-29-149. A certified copy of Tarver's prior federal felony drug conviction was admitted into evidence at trial without objection. S.C.R., Vol. 6, pg. 428. The existence of this prior conviction would warrant a doubling of Tarver's sentence under MISS. CODE ANN. § 41-29-147, which provides for sentence enhancement for subsequent drug offenders. *Apprendi* does not require that the fact of prior convictions to be decided by a jury; as such, a simple amendment to Tarver's indictment would also allow for his sentence to be doubled. Any error in failing to present the enhancement evidence to the jury was harmless, as there is no reasonable probability that doing so would have prevented Tarver's sentence from

being doubled. Thus, the state supreme court's decision that the trial judge did not abuse his discretion with regard to the sentence enhancement was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence. As such, Tarver this ground for *habeas corpus* relief will be denied.

### Dismissing Juror No. 11

Tarver also argues that the trial court abused its discretion in releasing Juror number 11 (without an *in camera* examination) based on the testimony of the prosecutor's investigation of the juror. As discussed above, the trial judge excused this juror because he had violated Uniform County and Circuit Court Rule 3.06, which governs the conduct of jurors. S.C.R., Vol. 8, pg. 727. Moreover, the trial judge chose not to conduct an *in camera* examination of the juror because he feared it would taint the jury pool. S.C.R., Vol. 8, pg. 730. For these reasons discussed above Tarver's allegations regarding the dismissal of Juror number 11 are without substantive merit. As such, the trial judge's decision to release Juror No. 11 was reasonable, and the trial judge was well within his discretion in doing so. Therefore, the Mississippi Supreme Court's decision that the trial judge did not abuse his discretion with regard to jury selection was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence. Tarver is not entitled to *habeas corpus* relief on this claim.

For these reasons, all of Tarver's claims for relief in Ground Five will be dismissed for

want of substantive merit.

### Ground Six:  Theft of Most of the Marijuana from the Sheriff's Department

In Ground Six Tarver claims that he is entitled to a new trial because the bulk of the marijuana recovered during the search was stolen from the sheriff's department prior to trial – and was thus unavailable to enter into evidence for the jury's consideration.  First, as the evidence at issue (a large amount of a controlled substance) would tend to incriminate Tarver, its absence could only inure to his benefit.  Second, a plethora of other incriminating evidence (including photographs of the huge amount of marijuana recovered during the search, core samples sent to the crime lab, and portions of the marijuana not stolen from the sheriff's department) was introduced against Tarver at trial; as such, the marijuana itself was not the only evidence used to establish his guilt.  For these reasons, Tarver's claim in Ground Six is without merit.

### Ground Seven:  Illegal Sentence under *Apprendi*, Improper Amendment of Indictment

In Ground Seven, Tarver argues that his sentence is illegal because:  (1) it was doubled, based in part on facts not presented to the jury (the distance between the location of the crime and the location of a nearby school) and thus violated the rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and (2) Tarver's indictment was improperly amended to replace the words "within fifteen hundred (1,500) feet of a park," with "within fifteen hundred (1,500) feet of a daycare."

Tarver argues that the trial judge abused his discretion in enhancing his sentence under MISS. CODE ANN. § 41-29-142 without requiring the facts supporting this enhancement to first be presented to the jury as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  The Supreme

Court ruled i *Apprendi* that:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

*Id*, 530 U.S. 466, 120 S.Ct. at 2363. In this case, Tarver's sentence was enhanced under MISS. CODE ANN. § 41-29-142, because the marijuana was located on a property which was within 1,500 feet of a daycare center. S.C.R., Vol. 1, pg. 1.

This claim fails for several reasons. First, Tarver waived his *Apprendi* claim because he neither posed a contemporaneous objection during sentencing nor raised the issue on direct appeal. *See* MISS. CODE ANN. § 99-39-21(1)[3]. In addition, any *Apprendi* error was harmless because Tarver's sentence (which was doubled under MISS. CODE ANN. § 41-29-142) was also subject to enhancement under MISS. CODE ANN. § 41-29-147, which doubles the penalty for a drug crime when a defendant, such as Tarver, has previously been convicted on a felony drug charge. A certified copy of Tarver's prior felony drug conviction was entered into evidence at trial. As such, as the trial judge obviously wished to enhance Tarver's penalty upon conviction, he could have done so under § 147, rather than § 142. Both sections call for doubling the

---

[3]§ 99-39-21. Waiver; defenses; res judicata; burden of proof

(1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

sentence of the present conviction in light of a previous one. The result is the same, either way. As such Tarver can show no harm from his *Apprendi* error claim.

Tarver's claim that the state indictment was improperly modified must also be dismissed, as the rules governing amendment of an indictment are matters of state law only – thus outside the purview of federal *habeas corpus* review. *Williams v. Collins,* 16 F.3d 626, 637 (5th Cir. 1994) (citing *Yohey v. Collins,* 985 F.2d 222, 229 (5th Cir.1993). The only exception is when the indictment was so defective that the convicting court had no jurisdiction. *Id.* The indictment in this case clearly charged an offense under state law, whether the language referred to a school or a park – and thus bestowed the trial court with jurisdiction. This claim is without substantive merit and will be denied.

## Ground Eight: Violation of Right to a Speedy Trial

In Ground Eight Tarver argues that the state violated his right to a speedy trial. However, under the four-factor test set forth in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972), this claim must also fail. The four factors to be weighed in evaluating a speedy trial claim are: (1) length of delay, (2) reason for the delay, (3) the accused's assertion of the speedy trial right, and (4) prejudice to the accused. These factors must be considered together, and no single factor is determinative.

As to the first factor, the delay in trying Tarver was substantial enough to warrant further inquiry. "The relevant period of delay is that following accusation, either arrest or indictment, whichever occurs first." *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993), *citing Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). As the delay between his arrest and trial (726 days) was over one year, the delay was presumptively prejudicial. *Nelson v.*

-32-

*Hargett*, 989 F.2d 847, 851 (5th Cir. 1993). This factor weighs in favor of Tarver's speedy trial claim.

Regarding the third factor, Tarver asserted his right to a speedy trial, S.C.R., Vol. 1, pg. 52; thus, the appellate court was correct in holding that this factor weighs in Tarver's favor. *Tarver*, 15 So.3d at 462.

The fourth factor is whether the delay caused prejudice to the defendant. This factor favors the State. The interests the speedy trial right protects are: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. The most serious interest is the last, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* In his petition, Tarver does not allege that he has suffered any prejudice as a result of the delay. Moreover, although "Tarver complains that the delay contributed to hardships he faced in locating two of his witnesses[;] . . . he does not provide any evidence of how those two witnesses could have affected the outcome of his case. Therefore, this factor weighs in favor of the State." *Tarver*, 15 So.3d at 462.

The second factor, reasons for the delay, also favors the State, as it appears that the delays arose both from the time necessary for the state crime lab to process drug and fingerprint evidence – and from actions by Tarver's counsel which delayed the trial. The court held a hearing, before the trial, on Tarver's motion to dismiss for violation of his right to a speedy trial. At this hearing, the State called Sgt. Lawrence Williams. Williams testified that Tarver was arrested on June 18, 2004, and the next grand jury was scheduled for September 2004. S.C.R., Vol. 5, pg. 237. Williams stated that, "[t]his was a narcotics case, and I believe that there were

-33-

results and so forth that the D.A.'s office was requesting that were not in, and my understanding that the investigation was not completed at that time of that grand jury." S.C.R., Vol. 5, pg. 237. Williams also testified that the fingerprint analysis was not received from the crime lab until December 2004. S.C.R., Vol. 5, pg. 254. The next available grand jury was scheduled to begin February 5, 2005, and the indictment was returned March 7, 2005. S.C.R., Vol. 5, pg. 238. The record reveals that trial was originally set for June 22, 2005; however, on the day of trial Tarver's original defense counsel, Chokwe Lumumba, sought to argue motions. S.C.R., Vol. 4, pg. 2-3 and Vol. 5, pg. 230. These motions required a two-day suppression hearing to resolve. Indeed, the record shows that, at the close of the first day of this hearing (the date set for the first day of trial), defense counsel stated that he was scheduled to be out of town and asked if they could "convene other than tomorrow or this week." S.C.R., Vol. 5, pg. 168. As set forth in the trial judge's order denying Tarver's motion to dismiss for lack of a speedy trial, after the hearings, trial was reset for December 1, 2005, because Tarver's counsel was not available during the current term of court. S.C.R., Vol. 1, pg. 50. Thereafter, Lumumba filed a notice that he had a conflict for the week of July 3 through July 7, 2005. S.C.R., Vol. 1, pg. 35. On October 6, 2005, a hearing was held on Tarver's motion to reduce his bond and the State's motion to amend the indictment. S.C.R., Vol. 5, pg. 280.

An agreed order granting a continuance was then entered "upon the motion of the defendant," because "counsel for the defendant will not be available until after April 2006." S.C.R., Vol. 2, pg. 204. On March 28, 2006, defense counsel again moved for a continuance of the trial then scheduled for April 12, 2006, because he was involved in a federal trial. S.C.R., Vol. 2,pg. 218. On June 12, 2006, defense counsel moved for another continuance due to a

conflicting trial.  S.C.R., Vol. 2, pg. 237.

Tarver's trial began on June 14, 2006.  The delay in bringing Tarver's case to trial arose largely from Tarver's repeated requests for extensions, not to the actions of the State.  In addition, it is telling that Tarver sought his many extensions *after* the delays attributable to the State – which shows a lack of urgency on Tarver's part to reach trial.  For these reasons, the state appellate court was correct in finding that "this factor weighs in the State's favor."  *Tarver*, 15 So.3d at 462.  A balancing of the *Barker* factors weighs in favor of the State.  The state court's decision to deny this ground for relief was reasonable in fact and law; as such, Tarver's claim in Ground Eight is without merit and will be denied.

### Ground Twelve: Cumulative Error

Finally, in Ground Twelve, Tarver argues that the cumulative effect of the errors alleged in previous grounds rendered his trial fundamentally unfair.  Cumulative error may only rise to the level of a *habeas corpus* claim when "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'"  *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (*citing Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)).  That is not the case in the present *habeas corpus* petition.  As discussed above, none of Tarver's claims has merit; as such, there are no errors to aggregate.  The state appellate court captured the issue well, holding that "[b]ecause we find that each of Tarver's individual complaints is without merit, we find the same to be true on this issue."  *Tarver*, 15 So.3d at 465.  Thus, Tarver's final ground for relief is also

without merit.

In sum, all of the claims in the instant petition for a writ of *habeas corpus* are without merit, and the petition will be dismissed. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED,** this the 7th day of September, 2011.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**